COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Petty and McCullough
Argued at Richmond, Virginia


NIKOLAOS KOLLAS

v.        Record No. 0129-12-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
NOVEMBER 6, 2012


FROM THE CIRCUIT COURT OF AMELIA COUNTY
James F. D'Alton, Judge

Edward P. Cuccias (Cuccias Law Office, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Nikolaos Kollas (appellant) appeals from his jury trial conviction for speeding in

violation of Code § 46.2-870.  On appeal, he contends the trial court erred in admitting into

evidence copies of certificates of tuning fork accuracy because they did not meet the

requirements of Code §§ 8.01-391 and 46.2-882 for the admission of copies.  We hold the trial

court's admission of the certificates was error.  Therefore, we reverse appellant's conviction and

remand for a new trial if the Commonwealth be so advised.

I.

BACKGROUND

On February 28, 2011, Amelia County Sheriff's Deputy John Harman issued appellant a

summons for speeding.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At trial, Deputy Harman testified he determined appellant's speed using the radar unit in his car, which he had calibrated, using tuning forks, before and after his shift that day. The Commonwealth offered calibration certificates for the tuning forks used by Harman. Each bore an attestation clause certifying the accuracy of the listed tuning forks as of October 11, 2010. Each attestation clause was signed by a reviewer and a technician, and those signatures were notarized on that same date, October 11, 2010.

In the lower right corner of each certificate, separate from the notarized signatures, each bore the following notation, which was typed or stamped: "THIS IS A TRUE-CERTIFIED COPY, OF THE ORIGINAL DOCUMENT. THE ORIGINAL IS ON FILE, IN THE AMELIA COUNTY SHERIFFS OFFICE." Beneath that notation was a line with a blank space, as if for a signature, and the typewritten date "11-15-2010." Beneath the line was the typed name and title, "Ranna D. Cope- Admin. Staff Spec." No initials or signature appeared on the line above Cope's name and title or anywhere in the vicinity of the typed notation, and none of the certificates bore any sort of official sheriff's department seal.

Appellant "object[ed] to [each certificate] not being the original" and to the fact that "it doesn't say who is the custodian of the original." The Commonwealth countered that Deputy Harman "can testify to it and the authenticity of it." The trial court found "[i]t says it's a certified copy of the original" and that "the original is on file with the Amelia County Sheriff." As a result, it held, "I think it's an exception to the rule," and it admitted the certificates.

Appellant was convicted of the charged offense and sentenced to a fine of $250.

II.

ANALYSIS

"Generally, the admissibility of evidence is within the discretion of the trial court," and a decision regarding admissibility will not be reversed absent an abuse of that discretion. Midkiff

- 2 -

v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010).  However, to the extent that

determination requires statutory construction, we review the issue *de novo*.  Greene v.

Commonwealth, 277 Va. 408, 410, 672 S.E.2d 832, 833 (2009).

Code § 46.2-882 provides in relevant part as follows:

> In any court or legal proceeding in which any question arises about
> the calibration or accuracy of any . . . radar . . . used to determine
> the speed of any motor vehicle, a certificate, *or a true copy thereof*,
> showing the calibration or accuracy of . . . any tuning fork
> employed in calibrating or testing the radar . . . , and when and by
> whom the calibration was made, shall be admissible as evidence of
> the facts therein stated.

Id. (emphasis added).  "'[T]rue copy' is a term of art with a specific meaning with respect to

government documents" and is defined in Code § 8.01-391(B).  Untiedt v. Commonwealth, 18

Va. App. 836, 838, 447 S.E.2d 537, 538 (1994).  Code § 8.01-391(B) provides that a copy of an

original government document

> shall be as admissible into evidence as the original, whether the
> original is in existence or not, *provided* that such copy [1] *is
> authenticated as a true copy* either by the custodian of said record
> or by the person to whom said custodian reports, if they are
> different,[1] *and* [2] *is accompanied by a certificate* that such person
> does in fact have the *custody*.

Id. (emphases added) (footnote added).

Appellant contends the copies of the certificates were improperly admitted because they

"do[] not contain a statement signed by someone claiming to be the custodian of the original"

and indicating "that he has the original in his custody."  He relies on our holding in Untiedt, in

which "[t]he photocopy [of the tuning fork certificate was] embossed on its face with the notary

---

[1] Prior to 2000, Code § 8.01-391, as well as related Code § 8.01-390, required that the copy be authenticated as a true copy by *both* the custodian of the record *and* the person to whom the custodian reports.  In 2000, however, the General Assembly amended these statutes to require certification by *either* the custodian *or* his supervisor.  2000 Va. Acts ch. 334; see Williams v. Commonwealth, 35 Va. App. 545, 554 n.6, 546 S.E.2d 735, 740 n.6 (2001).

public seal of Jodi C. Davis and contain[ed] the typewritten statement, 'I certify that this is a true copy.'" 18 Va. App. at 837, 447 S.E.2d at 538. The record also indicated that "Davis signed the attestation as notary public and gave the date of the expiration of her commission, [although she] did not indicate the date she made the attestation." Id. We held the photocopy of the tuning fork certificate at issue was inadmissible under Code §§ 8.01-391(B) and 46.2-882 because, although it "contain[ed] a notary public's attestation[, 'I certify that this is a true copy,']" the attestation "[did] not aver that the notary [was] the custodian of the original []or that she has (or had at the time) the original in her custody." Id. at 839, 447 S.E.2d at 539.

We revisited this issue in Williams v. Commonwealth, 35 Va. App. 545, 553, 546 S.E.2d 735, 739 (2001), which involved the question whether a copy of a certificate of drug analysis was admissible.[2] We reiterated that "'[p]roper authentication under [Code § 8.01-391] requires not only [1] certification of the copy as a true copy by the custodian of the record [or] the person to whom he reports, but also [2] a showing that the person certifying [is] indeed the custodian [or] the person to whom he reports.'" Id. at 554, 546 S.E.2d at 740 (quoting Ingram v. Commonwealth, 1 Va. App. 335, 340, 338 S.E.2d 657, 659 (1986)). In response to the defendant's claim that the evidence was insufficient to prove that the person certifying the copy was, in fact, the custodian or the person to whom the custodian reported, we reasoned as follows:

_____

[2] The panel in Williams clarified the erroneous assumption of the panel in Untiedt that a photocopy which did not comply with Code § 8.01-391(B) was *hearsay*. The panel explained in Williams that the immediately preceding code section, § 8.01-390, "codifies the 'official written documents exception' to the hearsay rule," whereas Code § 8.01-391 "'is a statutory exception to the best evidence rule.'" 35 Va. App. at 552, 546 S.E.2d at 739 (footnote omitted) (quoting Jackson v. Commonwealth, 13 Va. App. 599, 601, 413 S.E.2d 662, 664 (1992)). Appellant relies solely on Untiedt and also concludes, apparently mistakenly, that the best evidence issue is one of hearsay. The Commonwealth recognizes this apparent error on brief but concludes, and we agree, that it makes no difference here because the "true copy" test is the same under both -390 and -391.

- 4 -

> "Writings may be authenticated by circumstantial evidence. . . ."
> Walters [v. Littleton], 223 Va. [446,] 451, 290 S.E.2d [839,] 842
> [(1982)] (citations omitted).
>
> Our review of the record in this case convinces us that the
> certification attached to the copy of the certificate of analysis was
> sufficient . . . to show that the purported custodian, in fact, reported
> to the purported director and that the purported custodian, in fact,
> had custody of the original document. Here, both the certificate of
> analysis offered for admission by the Commonwealth and the
> attached certification were from the Division of Forensic Science's
> Tidewater Laboratory. The certification plainly shows that Hux
> and Campbell were both associated with the Tidewater Laboratory,
> Hux as its custodian of records and Campbell as its director. A
> "custodian" is "one entrusted officially with guarding and keeping
> (as property, artifacts, records)." Webster's Third New
> International Dictionary 559 (1993). A "director" is "one that
> directs: as . . . the head or chief of an organized occupational
> group." Id. at 641.

Id. at 556-57, 546 S.E.2d at 741. As a result, we concluded,

> The trial court . . . could . . . logically infer from the signatures and
> designations on the certification that (1) Hux, as the custodian of
> records at the Tidewater Laboratory, was the custodian of the
> original certificate of analysis of which the subject copy was made
> and (2) Campbell, as the director of the laboratory, was the person
> to whom all employees of the laboratory, including Hux,
> ultimately reported.

Id. at 557, 546 S.E.2d at 741. Finally, we held that these circumstances "[were] sufficient to

prove that the copy of the certificate of analysis [was] genuine." Id.

Here, by contrast, the circumstantial evidence was insufficient to meet the

Commonwealth's burden of proof because it failed to establish Ranna D. Cope was the custodian

of the certificates at issue or the custodian's supervisor. In Williams, "[t]he certification

accompanying the [proffered] copy of the certificate of analysis was signed by 'K. C. Hux' as

'Custodian of Records, Tidewater Laboratory,'" which supported a finding that Hux was, in fact,

the custodian of the certificate of analysis at issue. 35 Va. App. at 555-57, 546 S.E.2d at 740-41.

Here, by contrast, Cope's name was accompanied only by the title, "Admin. Staff Spec." We

hold this title, which indicated only that Cope's duties within the office were administrative, provided insufficient circumstantial evidence to prove Cope was either the custodian of the calibration certificates at issue or the custodian's supervisor. Cope's job title left open the reasonable hypothesis that she performed any number of administrative tasks in the sheriff's office unrelated to maintaining custody of calibration certificates or supervising those who did. Thus, we hold the trial court abused its discretion in concluding the evidence proved the necessary authentication and certification requirements for admission under Code § 8.01-391(B).

We further hold the calibration certificates failed to meet the "authenticat[ion] as a true copy" and "certificat[ion] [of] . . . custody" requirements of Code § 8.01-391(B) because they failed to include a signature of the purported custodian or supervisor. Although the precise form of the attestation certificate is not prescribed by this section, see Hurley v. Charles, 112 Va. 706, 709, 72 S.E. 689, 690 (1911) (decided under predecessor to Code § 8.01-391), our case law compels the conclusion that, on the facts of this case, a signature was required to satisfy both the authentication and certification requirements.

To "*authenticate*" is "[t]o prove the genuineness of[,] . . . as by attestation or other legal formality." Black's Law Dictionary 151 (9th ed. 2009) (emphasis added). We have held that "[t]he word 'attested' . . . imputes more stringent requirements than those connoted by the word 'signature.'" Frere v. Commonwealth, 19 Va. App. 460, 465, 452 S.E.2d 682, 686 (1995). Implicit in this holding is that a written attestation for purposes of authentication must include a signature or a recognized equivalent thereof. Id. at 466-67, 452 S.E.2d at 686-87; see Black's, supra, at 147 (defining "attest" as "[t]o bear witness; testify," or "[t]o affirm to be true or genuine; to authenticate by *signing* as a witness" (emphasis added)); cf., e.g., Code § 59.1-501.2(a)(6) (defining "[a]uthenticate" as used in the Uniform Computer Information Transactions Act to mean "(i) to sign or (ii) with the intent to sign a record, to execute or adopt

an electronic symbol, sound, message, or process referring to, attached to, included in, or logically associated or linked with, that record").

"When a person *certifies* a document," by contrast, "he or she is attesting to the fact that what is *contained* in the document is true." Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 17.1, at 1165 (7th ed. 2012) (emphases added). "'A "certificate" by a public officer is a statement written and *signed, but not necessarily sworn to*, which is by law made evidence of the truth of the facts stated for all or for certain purposes.'" Farber v. Douglas, 361 S.E.2d 456, 463 (W. Va. 1985) (emphasis added) (quoting Black's Law Dictionary 205 (5th ed. 1979)). Thus, a certificate, like a written authentication, requires a signature. See Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990) (implicitly requiring a signature for authentication and certification under Code § 8.01-389), overruled in part on other grounds by Waller v. Commonwealth, 278 Va. 731, 736-37, 685 S.E.2d 48, 50-51 (2009).

Here, each certificate bore the printed name of, and a signature line for, Ranna D. Cope, Administrative Staff Specialist, beneath the attestation clause indicating the document was a true copy of the original and that the original was on file in the Amelia County Sheriff's office. In the absence of a signature, the certificates failed to meet the authentication and certification requirements of Code § 8.01-391(B).

In the absence of proof of proper authentication and certification, the tuning fork certificates were inadmissible.

### III.

For these reasons, we hold the trial court erred in admitting the challenged tuning fork calibration certificates into evidence. Accordingly, we reverse appellant's conviction. Because appellant's only assignment of error before this Court on appeal challenged the admissibility of

the certificates and did not challenge the sufficiency of the evidence to support his conviction,

we remand for a new trial if the Commonwealth be so advised.[3]

<u>Reversed and remanded.</u>

---

[3] Although appellant challenged the sufficiency of the evidence at trial and mentioned it in the argument portion of his petition for appeal as a basis for requesting dismissal of the charge, he did not challenge the sufficiency of the evidence in his single assignment of error. Thus, no appeal was granted on the sufficiency issue, and neither this issue nor the remedy of dismissal is before us on appeal. <u>See</u> Rule 5A:12(c)(1) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."); <u>John Crane, Inc. v. Hardick</u>, 283 Va. 358, 376, 722 S.E.2d 610, 620 ("Whether evidence is admissible is a separate issue from whether that evidence is sufficient."), <u>modified on other grounds on reh'g</u>, 284 Va. 329, 732 S.E.2d 1 (2012); <u>Gray v. Commonwealth</u>, 220 Va. 943, 946, 265 S.E.2d 705, 706 (1980) (holding in a case involving an improperly admitted certificate of analysis that "[b]ecause . . . this reversal is for mere trial error, and not for evidentiary insufficiency, we will remand the case for a new trial").