COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Clements
Argued by teleconference


JEROME H. WILLIAMS
                                        OPINION BY
v.   Record No. 0422-00-1   JUDGE JEAN HARRISON CLEMENTS
                                        MAY 29, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                    Dean W. Sword, Jr., Judge

          Dianne G. Ringer, Senior Assistant Public
          Defender, for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     Jerome H. Williams was convicted in a bench trial of

possession of cocaine in violation of Code § 18.2-250.  On

appeal, he contends the trial court erred in admitting into

evidence a copy of the certificate of analysis issued by the

state forensic laboratory.  Finding no error, we affirm the

conviction.

                      I.  BACKGROUND

     On March 7, 1999, at 1:00 a.m., Police Officer Jeffrey

Stokes was on routine patrol in the City of Portsmouth when he

observed Williams riding a bicycle.  Stokes asked to speak with

Williams for a moment and Williams stopped. After a brief discussion, Williams consented to a search of his person. Incident to that search, Stokes found a substance he suspected was crack cocaine in Williams's identification badge holder. The substance was sent to the Commonwealth's Division of Forensic Science's Tidewater Laboratory in Norfolk for analysis.

At trial, the Commonwealth moved to introduce into evidence a properly attested certificate of analysis from the Tidewater Laboratory indicating that the tested substance was cocaine. The certificate the Commonwealth sought to have admitted, however, was a photocopy of the original certificate of analysis. Attached to the certificate was a cover sheet on Commonwealth of Virginia, Department of Criminal Justice Services, Division of Forensic Science, Tidewater Laboratory letterhead reading, "I certify that [the attached certificate of analysis] is a true and accurate copy in accordance with § 8.01-390 and 391 of the Code of Virginia." The certification was signed by "K. C. Hux, Custodian of Records, Tidewater Laboratory," and "Robert J. Campbell, Director, Tidewater Laboratory." Both signatures were dated November 24, 1999.

Williams, asserting that the Commonwealth's request for admission of a copy of the certificate of analysis, rather than

the original, created a "best evidence situation," objected to the introduction of the copy of the certificate of analysis on the ground that it lacked proper authentication. The certification attached to the copy did not, Williams argued, comply with Code § 8.01-390(A) and Code § 8.01-391(B).

The trial court, finding the copy of the certificate of analysis admissible because it had been properly authenticated under Code § 8.01-390(A), overruled Williams's objection and admitted the copy and attached certification as Commonwealth's Exhibit 2. Having determined the copy was admissible under Code § 8.01-390(A), the court concluded that it was unnecessary to consider whether the copy had also been properly authenticated under Code § 8.01-391(B).[1]

## II. ANALYSIS

On appeal, Williams contends the trial court erred in admitting the copy of the certificate of analysis into evidence because the copy was not properly authenticated under Code

---

[1] In reaching this conclusion, the trial court stated, "[t]here really seems to be no purpose when you read [Code § 8.01-391(B)] because it is almost a mirror of 390 [and] . . . doesn't seem to do anything."

§§ 8.01-390(A)[2] and 8.01-391(B).[3]  Incorporated into this

argument is Williams's assertion that the trial court improperly

admitted the copy of the certificate of analysis into evidence

solely because it found that the copy had been authenticated in

compliance with Code § 8.01-390(A).  He maintains that, because

he objected to the admission of the copy on the basis of both

---

[2] The version of Code § 8.01-390(A) applicable to this case
reads:

> Copies of records of this Commonwealth,
> of another state, of the United States, of
> another country, or of any political
> subdivision or agency of the same, other
> than those located in a clerk's office of a
> court, shall be received as prima facie
> evidence provided that such copies are
> authenticated to be true copies both by the
> custodian thereof and by the person to whom
> the custodian reports.

[3] The version of Code § 8.01-391(B) applicable to this case
reads:

> If any department, division,
> institution, agency, board, or commission of
> this Commonwealth, of another state or
> country, or of the United States, or of any
> political subdivision or agency of the same,
> acting pursuant to the law of the respective
> jurisdiction or other proper authority, has
> copied any record made in the performance of
> its official duties, such copy shall be as
> admissible into evidence as the original,
> whether the original is in existence or not,
> provided that such copy is authenticated as
> a true copy both by the custodian of said
> record and by the person to whom said
> custodian reports, if they are different,
> and is accompanied by a certificate that
> such officer does in fact have the custody.

- 4 -

Code §§ 8.01-390(A) and 8.01-391(B), the trial court should not have admitted the copy of the certificate of analysis without first determining that it had been properly authenticated under both statutes.

The document whose admissibility is at issue here is a photocopy of the original certificate of analysis. Had the original certificate of analysis been offered by the Commonwealth for admission into evidence, it would have been admissible over a hearsay objection under Code § 19.2-187.[4] That statute establishes an exception to the hearsay rule for the contents of certain certificates of analysis that have been properly attested and filed pursuant to the requirements of that

---

[4] Code § 19.2-187 provides, in pertinent part:

> In any hearing or trial of any criminal offense . . ., a certificate of analysis of a person performing an analysis or examination, performed in any laboratory operated by the . . . Division of Forensic Science . . . when such certificate is duly attested by such person, shall be admissible in evidence as evidence of the facts therein stated and the results of the analysis or examination referred to therein, provided (i) the certificate of analysis is filed with the clerk of the court hearing the case at least seven days prior to the hearing or trial and (ii) a copy of such certificate is mailed or delivered by the clerk or attorney for the Commonwealth to counsel of record for the accused at least seven days prior to the hearing or trial upon request made by such counsel . . . .

statute.  See Myrick v. Commonwealth, 13 Va. App. 333, 337, 412

S.E.2d 176, 178 (1991).  However, as we noted in addressing the

admissibility of a copy of a certificate of analysis in Proctor

v. Commonwealth, 14 Va. App. 937, 419 S.E.2d 867 (1992):

> Code § 19.2-187 addresses the problem of
> hearsay, and compliance with its
> requirements merely exonerates an otherwise
> hearsay document from the application of the
> hearsay rule.  The issue in this case is not
> hearsay, but authentication.  Although the
> original certificate, if filed in compliance
> with Code § 19.2-187, would have been
> admissible in evidence over a hearsay
> objection, a copy of that certificate, to be
> admissible, must be shown to be genuine and
> adequate.

Id. at 938-39, 419 S.E.2d at 868.  In other words, to be

admissible, the copy of the certificate of analysis must be

properly authenticated.  See id. at 938, 419 S.E.2d at 868.

Here, the copy of the certificate of analysis was

accompanied by a document certifying that the attached copy was

"a true and accurate copy in accordance with § 8.01-390 and 391

of the Code of Virginia."  That certification, the Commonwealth

contends, serves to authenticate the copy of the certificate of

analysis under the referenced statutes.

Code § 8.01-390 codifies the "official written documents

exception"[5] to the hearsay rule and sets forth the method of

---

[5] This exception is known by several names in Virginia, including the official records exception, the public documents exception, the official documents exception, the official

- 6 -

authentication that allows copies of certain official records of governmental entities to be admitted as prima facie evidence under that exception. Ingram v. Commonwealth, 1 Va. App. 335, 340, 338 S.E.2d 657, 659 (1986). "Under [the official written documents] exception, 'records and reports prepared by public officials pursuant to a duty imposed by statute, or required by the nature of their office, are admissible as proof of the facts stated therein.'" Taylor v. Maritime Overseas Corp., 224 Va. 562, 565, 299 S.E.2d 340, 341 (1983) (quoting Williams v. Commonwealth, 213 Va. 45, 46, 189 S.E.2d 378, 379 (1972)).

Conversely, "Code § 8.01-391, which concerns copies of originals as evidence, is a statutory exception to the best evidence rule." Jackson v. Commonwealth, 13 Va. App. 599, 601, 413 S.E.2d 662, 664 (1992); see also Charles E. Friend, The Law of Evidence in Virginia § 16-4(c) (5th ed. 1999). Code § 8.01-391(B) provides that, when properly authenticated pursuant to the requirements set forth in that section, copies made of their official records by governmental entities "acting pursuant to the law of the respective jurisdiction or other proper authority" are as admissible as the original records, whether the original records are "in existence or not."

---

recorded document exception, and the official written statements exception. See Charles E. Friend, The Law of Evidence in Virginia § 18-29 (5th ed. 1999).

Clearly, in this case, the original certificate of analysis of which the instant copy was made was an official record of a governmental entity. The question, then, is which statute, Code § 8.01-390(A) or Code § 8.01-391(B), controls the issue of the proper authentication of the copy of the certificate of analysis.

Here, the issue is not hearsay. See Myrick, 13 Va. App. at 338, 412 S.E.2d at 178-79. The original certificate of analysis was properly attested pursuant to Code § 19.2-187 by the forensic scientist who performed the analysis and prepared the certificate. That attestation, which appears on the copy offered by the Commonwealth, "obviates the hearsay problem." Id. at 338, 412 S.E.2d at 179.

Rather, Williams's objection to the admission of the copy of the certificate of analysis raises a best evidence question, which is whether a copy of the certificate of analysis can be admitted into evidence in lieu of the original. See id. Indeed, Williams's attorney noted in objecting at trial to the admission of the copy that the Commonwealth's request to have a copy rather than the original certificate admitted gave rise to a "best evidence situation."

Thus, we conclude that Code § 8.01-391(B), which codifies an exception to the best evidence rule, is the controlling statute in this case on the issue of authentication and that

- 8 -

Code § 8.01-390(A), which codifies an exception to the hearsay rule, is not applicable here. Hence, the trial court erred in admitting the copy of the certificate on the basis of the copy's compliance with the authentication requirements of Code § 8.01-390(A) and in concluding that compliance with the authentication requirements of Code § 8.01-391(B) was unnecessary.

We have held, however, that, "as long as the correct reason, along with a factual basis to support it, is raised in the trial court, '[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.'" Harris v. Commonwealth, 33 Va. App. 325, 332, 533 S.E.2d 18, 21 (2000) (alteration in original) (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992)). Accordingly, we will consider whether the trial court reached the correct result here.

"The best evidence rule requires that, to prove the contents of a document, the 'original must be produced unless it be shown that the original is unavailable, in which case secondary evidence may be introduced.'" Mostyn v. Commonwealth, 14 Va. App. 920, 923, 420 S.E.2d 519, 521 (1992) (quoting Myrick, 13 Va. App. at 339, 412 S.E.2d at 179). However, under the version of Code § 8.01-391(B) applicable to this case, a copy of an official record is admissible without regard to the

availability of the original if the copy "is authenticated as a true copy both by the custodian of said record and the person to whom said custodian reports and is accompanied by a certificate that such officer does in fact have the custody."[6]

In Ingram, in considering the authentication requirements of Code § 8.01-390(A), we construed the requirement that a copy of an official document be authenticated by both the record's custodian and the person to whom the custodian reports. We held as follows:

> [T]o comply with the statute double authentication is necessary to prove genuineness as a prerequisite to admission of a copy. Proper authentication under this statute requires not only certification of the copy as a true copy by the custodian of the record and the person to whom he reports, but also a showing that the persons certifying are indeed the custodian and the person to whom he reports. The latter requirement is crucial to admission into evidence of those documents governed by Code § 8.01-390. The statute addresses the admission of all nonjudicial records as evidence; without double authentication, a court presented with a document from a source with which it is unfamiliar would have no means of judging its genuineness.

1 Va. App. at 340, 338 S.E.2d at 659-60 (citation omitted).

---

[6] Code § 8.01-391(B), like Code § 8.01-390(A), has since been revised to now require that the copy be authenticated as a true copy by either the custodian of the record or the person to whom the custodian reports, rather than by both.

For the policy reasons mentioned in Ingram and quoted above, we will apply the same construction to the essentially identical authentication requirement in the version of Code § 8.01-391(B) applicable to this case. Accordingly, to comply with the requirement of Code § 8.01-391(B) that the copy be authenticated by both the custodian of the original record and the person to whom the custodian reports, the record must show that the persons certifying the copy of the certificate of analysis are indeed the custodian and the person to whom the custodian reports.

We also construe Code § 8.01-391(B)'s second authentication requirement—that the copy be "accompanied by a certificate that such officer does in fact have the custody"—to mean that there must be a certification accompanying the copy showing that the custodian did in fact have custody of the original document when the copy of it was made or when the copy was authenticated by the custodian, rather than when the copy was offered for admission into evidence. We reach this conclusion to alleviate the statute's ambiguity and to give meaning to that portion of Code § 8.01-391(B) that provides that the copy, if properly authenticated, "shall be as admissible into evidence as the original, whether the original is in existence or not." See Broadnax v. Commonwealth, 24 Va. App. 808, 814, 485 S.E.2d 666, 668 (1997) (noting that, in construing a statute, the intention

- 11 -

of the legislature must be gathered from the words used unless a literal construction would involve a manifest absurdity).  To construe the terms "does in fact have custody" literally as written, that is, in the present tense relative to the admission of the copy into evidence, would divest the phrase "whether the original is in existence or not," clearly referring to the time of admission, of its import.  While the words and phrases used in a statute should generally be given their "ordinary and usually accepted meaning," here "a different intention is fairly manifest."  Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 533 (1994).

The certification accompanying the instant copy of the certificate of analysis was signed by "K. C. Hux" as "Custodian of Records, Tidewater Laboratory" and "Robert J. Campbell" as "Director, Tidewater Laboratory."  No other evidence was offered regarding the positions of Hux or Campbell.

Williams argues that the certification does not constitute a proper authentication because it fails to establish that Campbell was, in fact, the person to whom Hux reported and it does not constitute a certification that the custodian, in fact, had custody of the original, as mandated by Code § 8.01-391(B). We may not presume, he contends, based solely on Hux's signature as "Custodian of Records" and Campbell's signature as "Director," that Campbell was the person to whom Hux reported

and that Hux had custody of the original certificate of analysis.

Williams relies on Taylor v. Maritime Overseas Corp., 224 Va. 562, 299 S.E.2d 340, to support his argument that the certification is insufficient to show that Hux reported to Campbell. In that case, the Supreme Court held that a Coast Guard "Boiler Inspection Book" was not admissible because it had not been properly authenticated by both the custodian and the person to whom the custodian reported. In reaching its decision, the Court noted as follows:

> Although each page of the proffered exhibit bore a stamp with the signature of a Coast Guard lieutenant certifying that the page was a "True Copy," nothing in the exhibit or the papers attached showed that this officer was the custodian of the disputed records. And, while the exhibit was accompanied by a letter of transmittal signed by "T. Wood[,] Captain, U.S. Coast Guard[,] Officer in Charge[,] Marine Inspection," nothing even suggested that Captain Wood was the person to whom the custodian reported.

Id. at 565, 299 S.E.2d at 342.

We are mindful, in considering these issues, that "[a]uthentication is the 'providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed.'" Taylor v. Commonwealth, 28 Va. App. 1, 6, 502 S.E.2d 113, 115 (1998) (en banc) (quoting Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982)). "Writings may be authenticated by circumstantial evidence. The

amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." Walters, 223 Va. at 451, 290 S.E.2d at 842 (citations omitted).

Our review of the record in this case convinces us that the certification attached to the copy of the certificate of analysis was sufficient, unlike the certification in Taylor, to show that the purported custodian, in fact, reported to the purported director and that the purported custodian, in fact, had custody of the original document. Here, both the certificate of analysis offered for admission by the Commonwealth and the attached certification were from the Division of Forensic Science's Tidewater Laboratory. The certification plainly shows that Hux and Campbell were both associated with the Tidewater Laboratory, Hux as its custodian of records and Campbell as its director. A "custodian" is "one entrusted officially with guarding and keeping (as property, artifacts, records)." Webster's Third New International Dictionary 559 (1993). A "director" is "one that directs: as . . . the head or chief of an organized occupational group." Id. at 641.

- 14 -

The trial court, we believe, could, therefore, logically infer from the signatures and designations on the certification that (1) Hux, as the custodian of records at the Tidewater Laboratory, was the custodian of the original certificate of analysis of which the subject copy was made and (2) Campbell, as the director of the laboratory, was the person to whom all employees of the laboratory, including Hux, ultimately reported. Accordingly, we conclude that these circumstances are sufficient to prove that the copy of the certificate of analysis is genuine. To conclude otherwise "would be technical in the extreme." Hurley v. Charles, 112 Va. 706, 710, 72 S.E. 689, 690-91 (1911) (finding, based on circumstantial evidence in the record, that a will had been properly certified even though the certificate accompanying the will contained only the deputy clerk's name and his abbreviated title designation).

This case is factually distinguishable from Taylor v. Maritime Overseas Corp. Unlike in our case, there was nothing in the proffered documents in Taylor that either directly or indirectly supported a finding that the person who certified them was the custodian of the records. Moreover, no link was drawn in Taylor between the alleged custodian and the person to whom the custodian allegedly reported. Even though the captain was designated in the proffered documents as the "Officer in Charge[,] Marine Inspection," there was no evidence to permit

the inference that he and the lieutenant were in the same unit or that the captain was otherwise in the lieutenant's chain of command.  Conversely, in the present case, the certification established both Hux's custodianship and the appropriate connection between Hux and Campbell.

We hold, therefore, that the copy of the certificate of analysis was properly authenticated under Code § 8.01-391(B) and that the copy was thus admissible into evidence over Williams's best evidence objection under the best evidence rule exception codified in that section.  Hence, the trial court reached the correct conclusion, albeit for the wrong reason.

For these reasons, we affirm Williams's conviction.

<u>Affirmed.</u>

Benton, J., concurring, in part, and dissenting, in part.

I agree with the majority's conclusion that the trial judge erred in ruling that Code § 8.01-390(A) controlled the issue of authentication and admission in evidence of the certificate. I also agree that Code § 8.01-391(B) is the controlling statute. I do not agree, however, that the record establishes compliance with Code § 8.01-391(B).

In pertinent part, Code § 8.01-391(B) provided as follows when this case was tried:

> If any department, division, institution, agency, board, or commission of this Commonwealth . . . has copied any record made in the performance of its official duties, such copy shall be as admissible into evidence as the original, whether the original is in existence or not, provided that such copy is authenticated as a true copy both by the custodian of said record and by the person to whom said custodian reports, if they be different, and is accompanied by a certificate that such officer does in fact have the custody.

In this case, no evidence in the record tends to establish that Campbell, the "Director," is "the person to whom" Hux, the "Custodian of Records," reports. The mere fact that a person's job title or job category description appears below the signature line of the certifying person does not prove the statutorily required fact. See Taylor v. Maritime Overseas Corp., 224 Va. 562, 565, 299 S.E.2d 340, 342 (1983) (applying similar language of Code § 8.01-390). The authentication in

- 17 -

this case is not significantly different than the authentication offered and rejected in Taylor. See 224 Va. at 565-66, 299 S.E.2d at 342. The phrase, "Officer in Charge," is not less clear than the word "Director." If anything, the former phrase better fulfills the statutory requirement because it implies that the signer is "in charge of" the alleged custodian.

I agree with the majority's conclusion that the statute's second authentication requirement means the custodian must have custody of the document when the copy is made. No evidence tends to prove, however, that the copy of the certificate that was admitted into evidence was "accompanied by a certificate that [Hux] does in fact have the custody." Nothing on the certificate indicates that fact. Although Hux's job title, "custodian of records," is more descriptive than the title of the alleged custodian in Taylor, see 224 Va. at 565, 299 S.E.2d at 342, the job title itself does not establish that Hux had the original certificate in his possession when he certified the proffered copy to be a true copy. Being a generic "custodian of records" does not prove custody of a particular document and certainly does not prove custody of the document when the copy was made.

While demanding compliance with these requirements may appear to be elevating form over substance, the legislature has mandated these requirements for authenticating a record. A

proponent of evidence must prove these necessary facts before the copy can be considered "authenticated."  Untiedt v. Commonwealth, 18 Va. App. 836, 839, 447 S.E.2d 537, 539 (1994). Absent any evidence to prove these facts, the trial judge could only have speculated that the statutory requirement had been satisfied.

For these reasons, I would hold that the record fails to establish that the Commonwealth satisfied the requirements of Code § 8.01-391(B).  Thus, I would reverse the conviction.